IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| T.A., | : | No. 3:26cv309 |
|     Petitioner | : | |
| | : | (Judge Munley) |
| v. | : | |
| JESSICA SAGE, in her official Capacity as Warden, FCI Lewisburg; DAVID O'NEILL, in his official Capacity as Acting Director, U.S. Immigration and Customs Enforcement; KRISTI NOEM, in her official Capacity as Secretary, U.S. Department of Homeland Security; and PAM BONDI, in her official capacity as Attorney General of the United States, | : | |
|     Respondents | : | |

## MEMORANDUM

Before the court is Petitioner T.A.'s petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241, (Doc. 1), and amended motion for a temporary restraining order ("TRO"), (Doc. 3). Petitioner, an immigration detainee subject to a removal order, has requested expedited disposition of his petition due to concerns of imminent removal to a third country without due process. As discussed below, the petition will be dismissed for lack of subject-matter

jurisdiction and the motion for a TRO will be denied. An order staying petitioner's removal from the United States will be vacated.

**Background**

As alleged in his habeas petition, T.A. is a native of Jamaica, who was brought to the United States at 11 years of age. (Doc. 1, ¶¶ 1, 5). His childhood was marked by violence. Petitioner's family was embroiled in a deadly political struggle, and as a young boy he witnessed an attempt to assassinate his father. Id. ¶¶ 5, 29–30. After petitioner came to live with his mother in Brooklyn, his father was killed in the conflict. Id. ¶ 30.

T.A. has primarily resided in Brooklyn over the last two decades. Id. Petitioner is married. His wife suffers from multiple sclerosis and experiences seizures, and petitioner served as her primary medical caretaker before his immigration detention. Id. ¶¶ 31–33. Petitioner is also a father. He has an 8-year-old son and tries to speak with him every day while detained. Id. ¶ 34.

T.A. is subject to a final order of removal. In May 2025, an immigration judge ("IJ") determined that petitioner was inadmissible and ordered him removed to Jamaica. (Doc. 1-2). At the same time, the IJ granted T.A. withholding of removal to Jamaica under INA § 241(b)(3), which applies where "the alien's life or freedom would be threatened in that country because of the alien's race, religion, nationality, membership in a particular social group, or

2

political opinion." 8 U.S.C. § 1231(b)(3). According to petitioner, Immigration and Customs Enforcement ("ICE") did not appeal the IJ's decision. (Doc. 1, Pet., ¶ 28). The removal order and accompanying relief became final on June 22, 2025. Id. (citing 8 C.F.R. § 1241.1).

T.A. is currently detained by ICE at FCI-Lewisburg pursuant to an interagency agreement with the Federal Bureau of Prisons. The length of his detention in ICE custody is not specified in the record.

The government wants to remove T.A. to a third country as soon as possible. On February 4, 2026—approximately seven months after the issuance of the IJ's order, ICE notified petitioner that it intends to remove him to Mexico, a country that was never addressed during the removal and withholding proceedings. (Doc. 1, Pet. ¶ 35; Doc. 1-4). The government seeks to carry out this third-country removal pursuant to its authority under 8 U.S.C. § 1231(b)(2) and recent Department of Homeland Security ("DHS") policy guidance regarding the removal of persons with country-specific protections to alternative countries. See DHS Memorandum, Guidance Regarding Third Country Removals (Mar. 30,

2025) ("March 30 Guidance[1]"); ICE Memorandum (July 9, 2025) ("July 9 Guidance[2]").

T.A.'s petition expresses significant fears regarding removal to Mexico. He alleges that he will face persecution based on his family's connections to a multigenerational drug enterprise, that his serious mental health conditions would likely result in institutionalization and severe human rights abuses, that he would be unable to seek protection from the Mexican government given anti-Black bias in the country, and that Mexico may simply remove him to Jamaica—the country that the United States has already determined he cannot be returned to because of the likelihood of persecution and death.[3] Id. ¶ 36.

T.A.'s petition and motion for a temporary restraining order do not challenge his underlying order of removal. Rather, petitioner contends that

---

[1] Available at https://immigrationlitigation.org/wp-content/uploads/2025/04/43-1-Exh-A-Guidance.pdf [https://perma.cc/6HER-YUCV].

[2] Available at https://immigrationlitigation.org/wp-content/uploads/2025/07/190-1-July-9-Guidance.pdf [https://perma.cc/KBE2-QGY9].

[3] Upon consideration of T.A.'s motion to proceed under a pseudonym, (Doc. 5), and applying the factors articulated in Doe v. Megless, 654 F.3d 404 (3d Cir. 2011), the court finds that petitioner has established a substantial privacy interest that outweighs the presumption of open judicial proceedings. Petitioner has demonstrated that public disclosure of his identity in connection with this immigration proceeding would expose him to a risk of retaliation, persecution, or physical harm, satisfying the requirement of a reasonable fear of severe harm. The court further finds that proceeding pseudonymously will cause no undue prejudice to respondents, who will retain full knowledge of petitioner's identity, and that no less restrictive alternative adequately protects petitioner's safety interests. The motion to proceed under a pseudonym will be granted.

4

respondents have violated his constitutional rights by pursuing removal to a third country without due process of law. Specifically, T.A. alleges that no IJ has adjudicated his fear claims regarding Mexico, and he describes a fast-moving situation in which removal could be executed before he is fully heard. Id. ¶¶ 37–40. He asks this court to order that respondents comply with certain procedural safeguards, which substantially mirror the framework originally imposed by the district court in D.V.D. v. U.S. Dep't of Homeland Sec., 778 F. Supp. 3d 355, 393 (D. Mass. 2025)—including written notice, a meaningful opportunity to raise fear-based claims, and adequate time to seek reopening of proceedings.

On the date of T.A.'s initial filings in the Middle District of Pennsylvania, February 9, 2026, the court held a telephone conference with counsel. During the call, counsel for respondents challenged the court's subject-matter jurisdiction. The parties were provided with 48 hours to brief their positions. (Doc. 8). The government promptly filed a response seeking dismissal on jurisdictional grounds and advised that a fear interview had been scheduled for February 11, 2026 with T.A.'s counsel present. (Docs. 9, 9-1).

In reply, T.A.'s counsel provided the following update: the fear interview had been rescheduled to February 11, 2026, at 8:00 a.m. Central Time; counsel was informed that the decision would be rendered "within a day or so" and that "there is no appeal process" beyond that determination. (Doc. 12, Pet. Reply Br.

at 4–5; Docs. 12-1, 12-2). The interview commenced but was not completed. During the interview, T.A. began hyperventilating and expressed active suicidal ideation and the officer ended the interview so T.A. could be brought to the medical unit. According to his counsel, T.A. had previously been diagnosed with major depressive disorder and post-traumatic stress disorder and had been placed on suicide watch during immigration detention. Counsel further represented that, under ICE's policy memoranda, removal to a third country can occur immediately upon denial of a fear interview. See March 30 Guidance; July 9 Guidance.

In summary, as of the date of briefing, T.A.'s counsel represented to the court that: (1) T.A. has had a partial fear interview; (2) the interview was not completed due to T.A.'s mental health emergency; 3) decisions on reasonable fear are rendered within approximately one day; (4) there is no formal appeal process for that determination; and (5) removal can occur immediately upon a negative fear finding. (Doc. 12).

Considering these representations, the court entered a temporary stay order on February 11, 2026 to preserve the *status quo* while evaluating the government's jurisdictional challenge, ordering that T.A. not be removed from the United States of America or from the Middle District of Pennsylvania. (Doc. 13).

After careful consideration and guided by legal obligation, this memorandum and accompanying order will vacate the February 11, 2026 order and dismiss T.A.'s petition for writ of habeas corpus for lack of jurisdiction. His motion for a TRO will be dismissed as moot.

By letter, counsel for T.A. has advised that a fear interview scheduled for today has been cancelled. (Doc. 14). Further, the correspondence indicates that petitioner intends to file an amended petition pursuant to Federal Rule of Civil Procedure 15(a)(1) to assert due process claims related to his mental health and conditions of confinement, "for which there would be no jurisdictional bar." Id. The petition for writ of habeas corpus will thus be dismissed without prejudice to T.A. filing an amended petition.

**Analysis**

The court is acutely aware of the grave circumstances presented in T.A.'s petition. A person who was granted protection from removal to his home country because his life would be threatened there now faces the prospect of removal to a country he has no connection to, with limited process, and under conditions that have triggered a mental health crisis. The court does not minimize the seriousness of these facts.

Nor does the court disregard the genuine tensions in the statutory and regulatory scheme as applied to T.A.'s situation. The interplay between a final

order of removal, a grant of withholding as to the designated country, and a subsequent third-country designation under recently promulgated administrative guidance raises novel questions. However, these questions are ones that Congress has directed be resolved through the petition for review ("PFR") process, not through habeas petitions in the district courts.

### 1. The Statutory Framework

To start, T.A. is subject to a final order of removal. See Nasrallah v. Barr, 590 U.S. 573, 579 (2020) (defining "final order of removal" as a "final order 'concluding that the alien is deportable or ordering deportation.'"); see also Khouzam v. Att'y Gen. of U.S., 549 F.3d 235, 247 (3d Cir. 2008) (defining "order of removal" as "order…concluding that the alien is removable or ordering removal."). Although T.A.'s withholding of removal shields him from return to Jamaica, it does not negate the underlying removal order. See Johnson v. Guzman Chavez, 594 U.S. 523, 539–40 (2021) (holding that a removal order remains "administratively final" notwithstanding pending withholding-only proceedings); see also Riley v. Bondi, 606 U.S. 259, 267–69 (2025) (holding that an order denying relief under the Convention Against Torture is not a "final order of removal" under the INA and does not affect the validity of a previously issued order of removal or render that order non-final).

Section 1252(a)(5) provides that "a petition for review filed with an appropriate court of appeals in accordance with this section shall be the sole and exclusive means for judicial review of an order of removal[.]" 8 U.S.C. § 1252(a)(5). District courts lack jurisdiction over those challenges to removal. E.O.H.C. v. Sec'y United States Dep't of Homeland Sec., 950 F.3d 177, 184 (3d Cir. 2020) (citing 8 U.S.C. § 1252(a)(5)).

"District courts also lack jurisdiction to review most claims **that even relate to removal.**" Id. Specifically, pursuant to Section 1252(b)(9):

> Judicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a final order under this section. Except as otherwise provided in this section, no court shall have jurisdiction, by habeas corpus under section 2241 of Title 28 or any other habeas corpus provision … to review such an order or such questions of law or fact.

8 U.S.C. § 1252(b)(9).

Section 1252(b)(9) has been referred to as a "zipper clause," Reno v. Am.-Arab Anti-Discrimination Comm., 525 U.S. 471, 483 (1999) ("AADC"), which channels claims into a single petition for review, E.O.H.C., 950 F.3d at 186. That is, "Congress intended the zipper clause to 'consolidate judicial review of immigration proceedings into one action in the court of appeals.' " Guerrero-Lasprilla v. Barr, 589 U.S. 221, 230 (2020) (quoting INS v. St. Cyr, 533 U.S. 280,

9

313 (2001)). Section 1252(b)(9) is a jurisdiction-stripping provision. Khalil v. President, United States, 164 F.4th 259, 273 (3d Cir. 2026).

### 2. The Now-or-Never Exception and Its Application

Section 1252(b)(9) does not bar all habeas petitions. As the Supreme Court has explained, Section 1252(b)(9) " 'does not present a jurisdictional bar' where those bringing suit 'are not asking for review of an order of removal,' 'the decision ... to seek removal,' or 'the process by which ... removability will be determined.' " Dep't of Homeland Sec. v. Regents of the Univ. of California, 519 U.S. 1, 19 (2020) (quoting Jennings v. Rodriguez, 583 U.S. 281, 294–95 (2018) (Alito, J., plurality op.), 355 (Breyer, J., dissenting) ("Jurisdiction also is unaffected by 8 U.S.C. § 1252(b)(9), which by its terms applies only with respect to review of an order of removal under Section 1252(a)(1).") (cleaned up).

The Third Circuit has interpreted the "arising from" phrase in Section 1252(b)(9) to exclude "now-or-never" claims—that is, claims that courts "cannot 'meaningfully' review through the PFR process." Khalil v. President, United States, 164 F.4th 259, 274 (3d Cir. 2026) (quoting E.O.H.C., 950 F.3d at 186 (3d Cir. 2020)). In E.O.H.C., the appellate court distilled a "simple principle" from Supreme Court precedent: "We must ask: If not now, when? If the answer would otherwise be never, then [Section] 1252(b)(9) poses no jurisdictional bar." 950 F.3d at 185–86.

10

Last month, Khalil refined the scope of this exception, resolving a question E.O.H.C. had left open. Specifically, a now-or-never claim "must raise legal or factual questions that a court of appeals will not later be able to review meaningfully on a PFR." Khalil, 164 F.4th at 274–75 (emphasis in original). "It is not enough to assert an *injury* that cannot be remedied later." Id. at 275 (emphasis in original). The court based this conclusion on the text, title, and purpose of Section 1252(b)(9), emphasizing that the provision channels "questions," not "claims," and that its purpose is to ensure "petitioners get just one bite at the apple—not zero or two." Id. at 281

### 3. T.A.'s Arguments for Jurisdiction

In his reply brief, T.A. advances several arguments for why his claims fall outside Section 1252(b)(9)'s channeling function. These arguments do not support the court having subject-matter jurisdiction at this time.

First, T.A. argues that he does not challenge his order of removal to Jamaica, the government's decision to seek removal in the first place, or the process by which his removability was determined. According to the petitioner, that process concluded long ago, he was found to be removable, an order was issued, and withholding was granted as to Jamaica. At that time, there was no final order regarding removal to Mexico (or, as the court notes, to El Salvador,

Panama, Costa Rica, Honduras, Ghana, Eswatini, Rwanda, or South Sudan). (Doc. 12 at 7).

The court agrees that there is a distinction between the original removal proceeding—which adjudicated T.A.'s removability and fear-based claims as to Jamaica—and the government's subsequent decision to designate Mexico as a third-country destination under Section 1231(b)(2).[4] The E.O.H.C. court recognized a comparable distinction when it held that a challenge to interim relocation to Mexico during removal proceedings to Guatemala (under the Migrant Protection Protocols or Remain in Mexico program) did not "arise from" the removal proceeding itself, because the claim was "wholly collateral" to the removal process. 950 F.3d at 186–87.

Khalil, however, draws a distinct line that runs against T.A.'s position. The Khalil court distinguished E.O.H.C. because, unlike a "wholly collateral" challenge to interim relocation, claims that are "inextricably linked" to the removal process arise from that process and must be channeled through a PFR. Khalil, 164 F.4th

---

[4] Section 1231(b)(2) sets out the procedure governing where noncitizens may be removed after a final order of removal is issued. Jama v. Immigr. & Customs Enf't, 543 U.S. 335, 338–41 (2005). Under the statute, third-country removals represent the fourth of "four consecutive removal commands[.]" Id. at 341. A noncitizen may be removed to (1) a country designated by the noncitizen; (2) a country of which the noncitizen is a subject, national, or citizen; or (3) a country with which the noncitizen has a lesser connection. See id. If removal to those countries is "impracticable, inadvisable, or impossible," the noncitizen may be removed to "another country whose government will accept the alien into that country." 8 U.S.C. § 1231(b)(2)(E)(vii).

at 274 (citing Ozturk v. Hyde, 155 F.4th 187, 189, 191-92 (2d Cir. 2025) (Menashi, J., concurring in denial of rehearing en banc)). T.A.'s challenge to his third-country removal is not collateral to the removal process in the way that E.O.H.C.'s challenge to interim relocation to Mexico was. Rather, T.A.'s claims directly concern the execution of his removal order, i.e., the question of where and under what conditions the United States may carry out the order. Consequently, the third-country designation under Section 1231(b)(2) is an action taken to effectuate his removal, and his due process challenge to the adequacy of the fear-screening process in connection with that designation is "bound up with" the removal process. See Tazu v. Att'y Gen., 975 F.3d 292, 299 (3d Cir. 2020).

Second, T.A. argues that his claims arose after his removal order became final and concern a country never previously designated in his proceedings, making it impossible for him to have raised these claims in any prior proceeding. Specifically, T.A.'s removal order became administratively final 30 days after the IJ's decision. 8 C.F.R. § 1241.1. The 30-day period for filing a PFR then began to run under 8 U.S.C. § 1252(b)(1). Riley, 606 U.S. at 266. Petitioner did not file an appeal to the Board of Immigration Appeals or a PFR because there was nothing adverse to challenge—he had obtained an order protecting him from removal to Jamaica. Without clairvoyance, he could not have raised fears of

13

persecution in Mexico before the IJ, because Mexico had not yet been designated.

The court takes this argument seriously because it raises potentially profound due process concerns. The timing issues between the PFR filing deadline and the subsequent third-country designation create a gap in the conventional channeling framework. Nonetheless, the existence of this gap does not, by itself, confer habeas jurisdiction on the court. Rather, the question under Khalil is whether T.A.'s legal and factual questions can be meaningfully reviewed later through a PFR. 164 F.4th at 274–75.

That leads the court into T.A.'s third argument. Petitioner frames his situation as a now-or-never predicament. He highlights the speed at which the process is unfolding. That is, the fear interviews under the DHS guidance are usually conducted and decided within a day; there are no formal appeals from a negative determination; and removal can follow immediately. Under the administrative guidance, the process affords minimal time and no administrative appeal mechanism.

The court sees the urgency of petitioner's situation and the tight timeline imposed by DHS guidance. These are legitimate concerns. But the now-or-never inquiry after Khalil does not turn on whether the injury is irreparable or imminent but on whether the legal and factual questions raised by petitioner can

14

be reviewed on a PFR. 164 F.4th at 275 ("Letting petitioners raise now-or-never injuries through habeas based on claims that can be litigated later would subvert that channeling scheme."). So, the court looks to the avenues available to T.A. other than this petition to determine whether his factual and legal questions are now-or-never.

### 4. T.A.'s Avenues for Review

Despite the undeniable difficulties of T.A.'s situation, several avenues appear to remain open.

<u>Motion to reopen administrative proceedings</u> – For his part, T.A. has tried to reopen his immigration proceedings. (Doc. 4, Pet. Br. in Supp. Inj. at 6). That motion remains outstanding. If reopening is granted, petitioner will have the opportunity to litigate his fear-based claims regarding Mexico before an IJ and, ultimately, to seek judicial review through a PFR or any adverse order.

<u>Pending fear interview</u> – T.A. has been provided a partial fear screening regarding removal to Mexico, which was commenced but not completed due to his medical emergency. That interview remains outstanding. According to petitioner, the interview scheduled for today was cancelled. That does not mean that the interview will not happen. Thus, there are still several possible outcomes from that fear interview. If T.A. demonstrates a reasonable fear to the officer, the government's own guidance contemplates reopening of proceedings. <u>See</u> March

30 Guidance; July 9 Guidance.  If the fear determination is negative but the motion to reopen succeeds, T.A. will have access to the immigration court.  If both avenues close, the resulting determination would itself generate a reviewable order or an opportunity to return to the district court level for emergency relief in habeas.

Petition for review – The footnotes in T.A.'s reply brief trigger other considerations.  (See Doc. 12 at 11–12 nn. 10–11).  Petitioner indicates:

> In an abundance of caution, T.A. may opt to also pursue a PFR before the Third Circuit Court of Appeals. However, a clerk at the Third Circuit already informed one of T.A.'s attorneys that the Circuit would likely not have jurisdiction and encouraged that attorney to challenge the notice of removal in district court.

Id.

A purported communication from a circuit clerk is not a court order foreclosing a PFR.  In Riley, the Supreme Court held that the 30-day PFR filing deadline in Section 1252(b)(1) is a *non-jurisdictional* claim-processing rule. 606 U.S. at 273–74.  That is, the language of Section 1252(b)(1) tells noncitizens "what they must do if they want judicial review, but it provides no directives to courts. It makes no reference to jurisdiction and lacks any language demarcating a court's power." Id. at 274 (cleaned up).

Under the law, "nonjurisdictional limitations periods are presumptively subject to equitable tolling" — "a traditional feature of American jurisprudence

16

and a background principle against which Congress drafts [such] periods." Boechler, P.C. v. Comm'r of Internal Revenue, 596 U.S. 199, 208–09 (2022). The decision in Riley thus appears to open the door for T.A. (and other similarly situated noncitizens) to argue that equitable tolling should apply. 606 U.S. at 273 (majority op.) (citing 33 C. Wright & A. Miller, Federal Practice and Procedure § 8316, p. 50 (2018) ("[A] litigant's failure to comply with a jurisdictional bar deprives a court of all authority to hear a case, regardless of waiver or equitable considerations."), 302–303 (Sotomayor, J., dissenting op.) ("In addition, the courts of appeals should consider applying standard principles of equitable tolling, which are likely available now that the Court has recognized that § 1252(b)(1)'s appeal deadline is not jurisdictional."); see also Holland v. Fla., 560 U.S. 631, 649 (2010) (reiterating that a petitioner is entitled to equitable tolling only if he shows (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing).

The court expresses no view on the merits of the above argument, but notes its availability as a potential pathway for T.A.  Until that pathway is blocked by a precedential opinion in the applicable circuit or by a Supreme Court decision, T.A. has another option other than this habeas petition.  Thus, T.A.'s situation, while urgent, does not present the kind of dead-end that would transform his claims into now-or-never questions exempt from Section

1252(b)(9)'s channeling mandate. The petition for writ of habeas corpus under 28 U.S.C. § 2241 will be dismissed for lack of jurisdiction.

Nonetheless, the court cannot determine at this time what happens next. Should all of the PFR avenues discussed above close without producing a reviewable order and should T.A. face imminent removal without allegedly having received meaningful process, nothing in this opinion forecloses petitioner from seeking relief under Section 2241 again on a more developed record. The court's dismissal is thus without prejudice. [5]

## Conclusion

For the reasons set forth above, T.A.'s petition for writ of habeas corpus will be dismissed for lack of jurisdiction and without prejudice to the filing of an amended petition within ten (10) days. T.A.'s motion for a TRO will be denied as moot. The temporary stay order of February 11, 2026 will be vacated. An appropriate order follows.

Date: 2/17/26

JUDGE JULIA K. MUNLEY
United States District Court

---

[5] The court need not reach respondents' alternative argument that 8 U.S.C. § 1252(g) strips this court of jurisdiction.