## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

T.A.,

           **Petitioner**

    v.

JESSICA SAGE, in her official
Capacity as Warden, FCI Lewisburg;
DAVID O'NEILL, in his official
Capacity as Acting Director,
U.S. Immigration and Customs
Enforcement;
MARKWAYNE MULLIN, in his
official capacity as Secretary, U.S.
Department of Homeland Security;
and TODD BLANCHE, in his official
capacity as Acting Attorney General
of the United States,

           **Respondents**

:     No. 3:26cv309

:

:     (Judge Munley)

## MEMORANDUM ORDER

Before the court is Petitioner T.A.'s amended and supplemented petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241, (Docs. 17, 19). The court previously granted petitioner's request to expedite disposition of Count V of the ten-count amended petition, which is a claim that T.A.'s prolonged detention violates 8 U.S.C. § 1231 and Zadvydas v. Davis, 533 U.S. 678 (2001).

Petitioner is a native of Jamaica, who was brought to the United States at 11 years of age. (Doc. 17, Am. Pet. ¶¶ 7). His childhood was marked by

violence.  T.A.'s family was embroiled in a deadly political struggle, and as a young boy he witnessed an assassination attempt on his father. Id. ¶¶ 51.  After petitioner came to live with his mother in Brooklyn, his father was killed in the conflict because of his involvement with the Jamaican Labor Party and the Shower Posse. Id. ¶¶ 52–53.

T.A. calls Brooklyn home, as he has over the last two decades. Id. ¶ 7. Petitioner is married to a former United States Postal Service employee. (Doc. 17-5. T.A. Decl. ¶¶ 12, 14).  His wife suffers from multiple sclerosis and experiences seizures, and petitioner served as her primary medical caretaker before his detention. Id. Petitioner is also a father.  He has an 8-year-old son and tries to speak with him every day while detained. Id. ¶¶ 15, 73–77.

T.A. has been in Immigration and Customs Enforcement ("ICE") custody since November 2024. Id. ¶¶ 1, 22.  His immigration case has been pending for approximately six years. (Doc. 23-1, M. Felton Decl. ¶ 3).  He was previously detained by ICE during the COVID-19 pandemic.[1]  (Doc. 17-5, T.A. Decl. ¶¶ 16–19).  Between his periods of detention, T.A. appears to have been on ICE's Intensive Supervision Appearance Program ("ISAP"). Id. ¶ 20.

---

[1] T.A. admits four criminal convictions, three related to marijuana and one for possession of criminal tools.  (Doc. 17-5, T.A. Decl. ¶¶ 16, 27).

T.A. is now subject to a final order of removal and Section 1231 governs his detention. In May 2025, an immigration judge ("IJ") determined that petitioner was inadmissible under 8 U.S.C. § 1182(a)(6)(A)(i) and ordered him removed to Jamaica. (Doc. 17-1). At the same time, the IJ granted T.A. withholding of removal to Jamaica under INA § 241(b)(3), which applies where "the alien's life or freedom would be threatened in that country because of the alien's race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1231(b)(3). According to petitioner, ICE did not appeal the IJ's decision. (Doc. 1, Pet., ¶ 260). The removal order and accompanying relief became final on June 22, 2025. Id. ¶ 50 (citing 8 C.F.R. § 1241.1).

T.A. is currently detained by ICE at FCI-Lewisburg pursuant to an interagency agreement with the Federal Bureau of Prisons. (Doc. 17-5. T.A. Decl. ¶ 22). He has been at FCI-Lewisburg since January 2026. Id.

The government wants to remove T.A. to a third country as soon as possible. On or about June 30, 2025, I-241 forms were sent to Trinidad and Tobago, United Kingdom, Brazil, Barbados, and Belize. (Doc. 23-1, M. Felton Decl. ¶ 6). Barbados, Brazil and the UK expressly declined acceptance of the petitioner. Id. ¶¶ 7–9.

On February 4, 2026, ICE notified petitioner that it intended to remove him to Mexico, a country that was never addressed during the removal and

3

withholding proceedings. (Doc. 17 ¶ 112).  One month later, the government affirmatively conceded that it could not remove the petitioner to Mexico. (Doc. 23-1, M. Felton Decl. ¶ 6).

The government has not identified an additional third country for removal purposes. Id. ¶ 13.  No country has accepted the petitioner and no concrete assurance of acceptance has been proffered.  Thus, T.A. has been detained for ten months following his removal order becoming final with no end to his detention in sight. [2]

As indicated above, Count V of the amended and supplemented petition advances a Zadvydas claim — alleged violations of 8 U.S.C. § 1231(a)(6) and the Due Process Clause of the Fifth Amendment to the United States Constitution.[3]  Count VI advances a separate claim for violation of the petitioner's substantive due process rights.  Count VIII asserts a claim for violation of the petitioner's procedural due process rights.[4]

---

[2] The court has subject matter jurisdiction under 28 U.S.C § 2241(c)(3), which grants federal courts authority to entertain petitions from persons held "in custody in violation of the Constitution or laws…of the United States."  Section 2241 remains the basic method for obtaining review of continued custody after a deportation order becomes final. Zadvydas, 533 U.S. at 687.

[3] At petitioner's request, Counts I-IV will be held in abeyance given the Third Circuit's stay of further consideration of T.A.'s third-country removal claims. (See Doc. 25 at 3; Doc. 27 at 2).

[4] Count VII alleges that the government's conduct is arbitrary and capricious in this case and contrary to the law. Furthermore, the government objects to Counts IX and X of the petition, claims under the Religious Freedom Restoration Act of 1993 and Section 504 of the

4

Section 1231 governs detention and removal of aliens ordered removed. When an alien is ordered removed, the government "shall" remove the alien from the United States within a period of 90 days. 8 U.S.C. § 1231(a)(1)(A). The removal period begins on the date the order becomes administratively final. Id., § 1231(a)(1)(B). In this case, T.A.'s order became administratively final on June 22, 2025 and the Section 1231(a)(1)(A) removal period ended on September 20, 2025.

"After that 90-day period, 'aliens ordered removed ... [as] inadmissible under 8 U.S.C. § 1182,' like [p]etitioner…'may be detained beyond the removal period' or 'released'" under supervision. Munoz-Saucedo v. Pittman, 789 F. Supp. 3d 387, 395 (D.N.J. 2025) (quoting 8 U.S.C. § 1231(a)(6); Zadvydas, 533 U.S. at 683.[5] In Zadvydas, the Supreme Court construed the statute to permit detention "only for a period reasonably necessary to secure removal," and recognized a "presumptively reasonable" six-month detention period. 533 U.S. at 699, 701. After six months, "once the alien provides good reason to believe that

---

Rehabilitation Act respectively. (Doc. 23, Resp. at 14). The court need not reach T.A.'s other claims to grant habeas relief.

[5] The statute's use of "may" suggests discretion, not necessarily unlimited discretion; it is thus ambiguous. Clark v. Martinez, 543 U.S. 371, 377 (2005) (quoting Zadvydas, 533 U.S. at 697, 689, 699). In light of that perceived ambiguity and the serious constitutional threat posed by indefinite detention of aliens who had been admitted to the country, the United States Supreme Court interpreted Section 1231(a)(6) to permit only detention that is related to the statute's basic purpose of effectuating an alien's removal. Id. (quoting Zadvydas, 533 U.S. at 699)); see also Johnson v. Arteaga-Martinez, 596 U.S. 573, 579 (2022) (discussing Zadvydas).

there is no significant likelihood of removal in the reasonably foreseeable future, the [g]overnment must respond with evidence sufficient to rebut that showing." Id. at 701.

Petitioner has established "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." Zadvydas, 533 U.S. at 701.  He has an order withholding his removal to Jamaica, his country of origin. (Doc. 17-1).  Per the government's response, five additional countries expressly or impliedly rejected accepting the petitioner. (Doc. 23-1, M. Felton Decl. ¶¶ 6–9).  In February 2026, ICE informed petitioner that it intended to remove him to Mexico.[6]  (Doc. 17-3).  Petitioner and his counsel have extensively described the level of notice and the process, or lack thereof, which was afforded to T.A. in expressing his fears about removal to Mexico. (Doc. 17-2, M. Lauterback Decl., ¶¶ 4–23; Doc. 17-5, T.A. Decl. ¶¶ 63–70).  During this process, T.A. called the Mexican consulate and learned that Mexico was not accepting Jamaicans, according to his declaration. (Doc. 17-5 ¶ 70).  Thus, there is evidence of record that the government failed in its attempts to remove the petitioner to six countries during the petitioner's ten-month period of detention

---

[6] Per T.A., at FCI-Lewisburg intake, an ICE officer gathered all individuals granted withholding or Convention Against Torture relief and said, "we're sending all of you to Mexico." (Doc. 17-5 ¶ 49).

after his removal order became final. Whether removal to Mexico was ever even possible remains an open question. [7]

In response to the question posed by Count V — whether there is a significant likelihood of removal in the reasonably foreseeable future — respondents have provided one or two conclusory sentences that ICE is exploring other "removal opportunities" for T.A. and that there is "SLRRFF." Id. ¶¶ 13–14. The government has provided the court with an acronym, but not any actual evidence to support that acronym. That is insufficient to rebut petitioner's showing that removal is not reasonably foreseeable.

Therefore, for the reasons set forth above, it is hereby **ORDERED** that:

1) Count V of T.A.'s amended and supplemented petition for writ of habeas corpus, (Docs. 17, 19), is **GRANTED**. T.A.'s detention is no longer authorized by Section 1231(a)(6) as construed by Zadvydas.

2) Respondents shall release T.A. from detention within 48 hours of this order.

3) T.A. shall be subject to the terms of supervision in 8 U.S.C. § 1231(a)(3) and attendant regulations;

---

[7] In response to T.A.'s evidence with respect to the decision to remove petitioner to Mexico, ostensibly when Mexico was not accepting Jamaican nationals, ICE's deportation officer stated: "Petitioner was scheduled to be removed to Mexico, but the circumstances surrounding that removal have changed and Mexico is no longer a removal option for [p]etitioner." (Doc. 23-1, M. Felton Decl. ¶¶ 12). This explanation is as good as no explanation.

4) Respondents shall release T.A. with all his personal property, including the items he had with him at Moshannon Valley Processing Center.

5) Within 72 hours, respondents shall file a declaration or affidavit pursuant to 28 U.S.C. § 1746 confirming that T.A. has been released.

6) T.A. may file a motion for attorneys' fees and costs under the Equal Access to Justice Act, 28 U.S.C. § 2412 within thirty (30) days of final judgment.

7) T.A. shall file a status report every 120 days regarding the unresolved claims asserted in the petition.

8) The Clerk of Court is directed to administratively close this case.

Date: 4/20/26

JUDGE JULIA K. MUNLEY
United States District Court

8